RANDOM

JUDGE KENDALL
MAGISTRATE JUDGE VALDEZ

RECEIVED
EY
6/8/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1:22-CV-2999

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| JACLYNN HOOKER, | ) | |
| Petitioner, | ) | Case No._____ |
| | ) | |
| vs. | ) | [formerly Circuit Court of the Twelfth |
| | ) | Judicial Circuit Will County, Illinois] |
| NATHANIEL HOOKER, | ) | |
| Respondent. | ) | |

### NOTICE OF REMOVAL

Defendant **NATHANIEL HOOKER,** hereby removes Case No., 17 D 1098 from the Circuit Court of the Twelfth Judicial Circuit of Will County, Illinois, to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446(b), and as ground for its removal states as follows:

#### I. INTRODUCTION

1. On October 19, 2021, the Petitioner filed their **Appearance** in the Circuit Court of Will County, Illinois in reference to Case No. 17 D 1098, Jaclynn Hooker vs. Nathaniel Hooker.

2. On the same date of October 19, 2021, the Petitioner filed a Notice of Motion, titled **Motion to Reallocate Expenses and Other Relief** and **Motion to Modify Child Support**.

3. In reference to the two Motions noted above, specifically the **Motion to Reallocate Expenses and Other Relief** and **Motion to Modify Child Support**, the Petitioner filed a **Financial Affidavit**, which was said to be true and correct.

4. This **Financial Affidavit**, was one of multiples that the Petitioner filed, which was said to be true and correct.

#### MOTION TO MODIFY CHILD SUPPORT

5. The **Motion to Modify Child Support**, purports to establish Subject Matter and Personal Jurisdiction to the Will County Court House, as well as the following:

    a. That a Judgement for Dissolution of Marriage was entered **Lawfully**, between the Petitioner Jaclynn Hooker, and the Respondent Nathaniel Hooker, and consequently their three children: Jaidyn Elizabeth Hooker, Elijah Timothy Hooker, and Madisyn Marie Hooker.

    b. In addition, the Motion purports that a **Lawful** Child Support amount was calculated, from which the Respondent was imputed a gross income of $47,760.24 per year, and the

      Petitioner's income was calculated based on her career and other means, as she stated in her Financial Affidavit to be $67,428.

  c. The **Motion to Modify Child Support**, also purports that a **Lawful** division of the marital property was conducted.

  d. The **Motion to Modify Child Support** purports that 750 ILCS 5/510 of the Illinois Marriage and Dissolution of Marriage Act, establishes, that increases in a spouses income qualifies as a "**substantial change in circumstances**", which creates an avenue to modify Child Support.

### MOTION TO REALLOCATE EXPENSES AND OTHER RELIEF

1. The **Motion to Reallocate Expenses and Other Relief**, purports to establish Subject Matter and Personal Jurisdiction to the Will County Court House, as well as the following:

  a. That a Judgement for Dissolution of Marriage was entered **Lawfully**, between the Petitioner Jaclynn Hooker, and the Respondent Nathaniel Hooker, and consequently their three children: Jaidyn Elizabeth Hooker, Elijah Timothy Hooker, and Madisyn Marie Hooker.

  b. In addition, the Motion purports that a **Lawful** Child Support amount was calculated, from which the Respondent was imputed a gross income of $47,760.24 per year, and the Petitioner's income was calculated based on her career and other means, as she stated in her Financial Affidavit to be $67,428.

  e. The **Motion to Modify Child Support**, also purports that a **Lawful** division of the marital property was conducted.

  f. The **Motion to Modify Child Support** purports that 750 ILCS 5/510 of the Illinois Marriage and Dissolution of Marriage Act, establishes, that increases in a spouses income qualifies as a "**substantial change in circumstances**", which creates an avenue to modify Child Support.

  c. That the Petitioner has transferred the unpaid balance of the Kia Optima as noted in Count VII: KIA OPTIMA of the DIVORCE JUDGMENT into her name.

### <u>GROOUNDS FOR REMOVAL</u>

### <u>FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331</u>

1. This Honorable Court has jurisdiction over this matter under 28 U.S.C. § 1331, for the reason that 1331 provides the district courts with non-exclusive, original jurisdiction over all civil actions based on a federal question, i.e. claims which arise under the Constitution, law or treaties of the United States. See Tafflin v. Levitt, 493 U.S. 455, 458- 460 (1990); Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473,478-89 (1981). As such this honorable Court has Jurisdiction according to 28 U.S.C. § 1331 for the following reasons:

    a.    Nathaniel Kain Hooker is an "Officer of the United States" appointed to a permeant position within the Executive Branch under Oath of Office – 5 U.S. Code 3331:

> "An individual, expect the President, elected or appointed to an office of honor or profit in the civil service", See. Freytag v. Commissioner, 501 U.S. 868 (1991).

As such, Nathaniel Hooker is not a regular citizen, but is a Civil Servant of the United States, and not of any singular State within the Union, since you can only have one Master, and Nathaniel Hooker has not given an Oath of Office to any other sovereign, nor his allegiance to another Master, but only to the United States Government.

In addition, Nathaniel Kain Hooker receives his immediate income soley from the Federal Government, as well as is under the UCMJ, as well as other military laws, statues, rules, and orders.

Additionally, Nathaniel Kain Hooker truly believes that his Constitutional Rights as laid out in Article III, Section II of the Constitution established the original jurisdiction of his Case, to belong to the U.S. Supreme Court according to 28 U.S.C. 1251, since Nathaniel Hooker is a federally appointed officer, and as such, the U.S. Supreme Court has jurisdiction in this case, or at least the Federal Courts do. This is necessary under the Common Laws of our Ancestor Courts, since Federal Officers are nothing more than an extension of the "Prince", or the Original Executive Branch, which included the Judiciary.

The purpose of 28 U.S.C. 1251, and the Federal Courts having Original Jurisdiction, is due to the complexities and honor associated with being appointed by the "Prince", and the majesty that position calls for, as well as all of the spoils, benefits, riches and rewards bestowed by the hand of the "Prince" (Executive Branch), which can only be equitably known and decided upon by a Federal Court, be it the U.S. Supreme Court, or one of the Inferior Courts established by the "People". This is necessary to maintain a strict adherence to the Separation of Powers Doctrine, and individuals of each Department to Operate Freely without Coercion, and to openly obey their duties and allegiance to the Supreme Sovereign without fear of retribution by the individual states, which was the main reason this country moved away from a weak Confederacy.

Additionally, since these rewards were bestowed under federal laws and statues, Nathaniel Kain Hooker believes that his 14th Amendment was violated, since his life, liberty and property were taken, outside of the Federal Courts, which violated the Due Process of Law.

Further, since the Right to Petition is a given Right in the Constitution under the 1st Amendment, 2nd Amendment, 4th Amendment, 5th Amendment, 6th Amendment, 13th Amendment, and the 14th Amendment, Nathaniel Kain hooker truly believes that the Federal Courts have jurisdiction over him, and the State proceedings were a violation of his Constitutional Rights, since his Right to Petition the Government "Courts" was not proper, and thus further violated his Due Process of Law, as well as his right to Privacy

and Defend his life, liberty, and property, or in other words, make His War, which includes the Original Right to Petition in the proper Court, under the Rule of Law, since Nathaniel Kain Hooker is a Civil Servant of the United States of America, and not of any state, and has not been convicted of any crime for which his has been given a sentence of involuntary servitude.

b. To prove Nathaniel Kain Hooker is bound, clothed, and guarded by the United States Government, as opposed to any state, or lesser sovereign within the True Sovereign, Nathaniel Kain Hooker points to the following:

  i. Mr. Hooker served Active Duty for the United States Coast Guard for a term of four years (Executive), to begin in 2011.

  ii. Mr. Hooker was Honorably Discharged from the United States Coast Guard in December of 2015, and was placed within the Individual Ready Reserve for an additional four years (Executive).

  iii. In December of 2019, Mr. Hooker was appointed to a GS11 position, under an Oath of Office with the Department of Defense (Executive).

  iv. Mr. Hooker is a Veteran with a 70% Disability rating from the Veterans Affairs (Executive).

  v. Mr. Hooker receives all of his Medical Care through the Veterans Affairs Department (Executive).

  vi. Mr. Hooker's property, namely his home was purchased utilizing his Benefits, Rewards, and Honors, while serving for the United States Coast Guard, and were direct results his jurisdiction under 18 U.S.C. 7, and therefore these monies he received, receives, and benefits he continues to receive from his time on Active Duty, are considered the result of Admiralty properties, profits, and benefits, according to 28 U.S.C 1333, and therefore the division of these properties falls under the jurisdiction of the Federal Courts.

c. Mr. Hooker states that the case at hand is not of regular Case Law given the facts stated above. Mr. Hooker receives his VA Disability Compensation from the Federal Government, to offset his inability to utilize his body to the extent he once was, in similar fashion to SSI, see., 38 U.S.C. 5301(a)(1), and therefore, the attachment of his Disability Compensation falls under a federal law, therefore invoking the Federal Courts according to 28 U.S.C 1331. This is further substantiated by the U.S. Supreme Court invoking its jurisdiction to decide Rose v. Rose, 481 U.S. 619, 107 S. Ct. 2029, 95 L. Ed. 2d 599 (1987), which begged the question of Federal anti-attachment and anti-alienation provisions found at 38 U.S.C § 3101 and 42 U.S.C. § 662(f)(2). Therefore, in the instant case, Nathaniel Kain Hooker was given his disability rating before the divorce in question, and therefore, the Federal Courts have Jurisdiction since it has to do with Federal Statues, as well as overall Federal Jurisdiction of his Person, Place, and Thnigs. See Womack v. Womack, 307 Ark. 269, 818 S.W.2d 958 (1991); In re Marriage of Bahr, 29 Kan. App. 2d 846, 32 P.3d 1212 (2001); Riley v. Riley, 82 Md. App. 400,571 A.2d 1261 (1990); Weberg v. Weberg, 158 Wis. 2d 540, 463 N.W.2d 382 (Ct. App. 1990).

    d. Nathaniel Kain Hooker states, that given the facts that (1) he receives all of his sums of both income and compensation from the hand of the Federal Government, without Illinois having any claim or hand in the process, (2) he is a GS11 with the Department of Defense serving both under the Laws of the United States as well as the UCMJ, (3) he is a Michigan resident, whereas the Plaintiff is an Illinois resident, (4) the monies and compensation in question are transferred across state lines (Interstate Commerce), (5) he is a Veteran having served honorably and was discharged Honorably, (6) he served Active duty for the united States Coast Guard in and around the waters of Lake Michigan, and receives both benefits and compensation in the form of monies from his injuries and time served while being in the Active Duty Component of the United States Coast Guard, and when serving he had Special maritime and territorial jurisdiction of the United States as defined in 18 U.S.C. 7, and therefore these monies he received, receives, and benefits he continues to receive from his time on Active Duty, are considered the result of Admiralty properties, profits, and benefits, according to 28 U.S.C 1333, the Federal Courts have jurisdiction according to 28 U.S.C. § 1331. See Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 809 (U.S. 1986) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8-9 (1983) (quoting American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257,260 (1916))).

    e. Mr. Hooker further states, that even if state law creates a party's causes of action, federal question jurisdiction may still be found where the party's right to relief requires resolution of a substantial question of federal law. See Franchise Tax Bd., 463 U.S. at 13, which Mr. Hooker believes exists within the instant Case.

### **CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331**

2. Nathaniel Kain Hooker has submitted numerous motions challenging the Jurisdiction of the Courts of Illinois, under Illinois Statues, see. 735 Ill. Comp. State. Ann. 5/2-301, Federal Law, Common Law antecedents, Military and International Law. Mr. Hooker is challenging both the Subject Matter Jurisdiction of this Court, as well as the Personal Jurisdiction of this Court.

    a. Mr. Hooker has repeatedly utilized both Illinois Statues and Case Law, that Subject matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 334 (2002). "Personal jurisdiction refers to the court's power to bring a person into its adjudicative process." People v. Castleberry, 2015 IL 116916.

    b. Within multiple Motions, Mr. Hooker has stated to the Illinois Court within the Jurisdiction of Will County, that personal jurisdiction; i.e., the ability of the court to bring him into its adjudicative process, has been the basis of his pleadings. See Castleberry, 2015 IL 116916.

    c. Mr. Hooker further stated that personal jurisdiction can be waived. Section 2-301(a-5) of the Code of Civil Procedure provides that, a "party fil[ing] a responsive pleading or a motion *** waives all objections to the court's jurisdiction over the party's person." 735 ILCS 5/2-301(a-5) (West 2016), however, Mr. Hooker has advanced these issues

throughout the entirety of the proceedings, and continues to do so, and adamantly challenges the Personal and Subject Matter Jurisdiction of the Will County Court, and states that all and any resulting judgements are void, "[w]hether a judgment is void or voidable presents a question of jurisdiction," People v. Davis,156 Ill.2d 149, 155, 189 Ill.Dec. 49, 619 N.E.2d 750 (1993) ,"Jurisdiction is a fundamental prerequisite to a valid [judgement]. Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time." Id. A voidable judgment, in contrast, "is one entered erroneously by a court having jurisdiction and is not subject to collateral attack." Id. at 155–56, 189 Ill.Dec. 49, 619 N.E.2d 750.

Mr. Hooker has stated these facts through his Motions and Pleadings, however, these Motions and Pleadings have fallen on deaf ears, and as a result, Mr. Hooker seeks Relief form the Federal Courts, since his Right to Petition is a given right in the Constitution under the 1st Amendment, 2nd Amendment, 4th Amendment, 5th Amendment, 6th Amendment, 13th Amendment, and the 14th Amendment, and he has been Violated, and therefore his Due Process secured by the Federal Government brings this case withing the Jurisdiction of the Federal Courts.

   i. Mr. Hooker states that the Court at Will County, or Counsel O'Brien never objected in any meaningful way through a hearing or contested pleadings, that the Will County Court lacked Jurisdiction, but instead, simply stated "That this court has jurisdiction over the subject matter and the parties hereto," without citing any authority, and haven given no meaningful hearing for the same, save maybe for the Court date of 01/18/2022, when Counsel O'Brien agreed to address the Motion to Jurisdiction, however, even at this court date, Hon. Garcia argued on behalf of the Court more than Counsel O'Brien, and offered no Lawful authorities, and at which point afterwards started the imposition of a Contempt Proceeding, because Mr. Hooker believed the Will County Courthouse lacked Jurisdiction to decide the case.

   ii. Mr. Hooker states that the Contempt Proceeding against him, and Coercion of Arrest, are essentially a sentenced imposed by the Court, amounting to a violation of the Void Sentence Rule, since "the sentence did not conform to the statutory requirements," which mandates that before a Contempt Proceeding and Coercion of Arrest, a court must first have Personal and Subject Matter Jurisdiction, as well as must conduct an actual meaningful hearing" according to the Due Process Clause, the 1st Amendment, 2nd Amendment, 4th Amendment, 5th Amendment, 6th Amendment, 13th Amendment, and the 14th Amendment, since the imposition of a Contempt Proceeding by Order of the Court, is as weighty as any other Judgment or Sentenced imposed on a Defendant. At the time the Order was issued finding the Respondent in Willful Contempt, the Court shackled the Respondent with the terrors of chains, bars, and fines, without having Personal or Subject Matter Jurisdiction over Mr. Hooker, or affording him the Due Process necessary under the Rule of Law. At that point, Mr. Hooker became no different than a Vagabond, or an Involuntary Servant or Criminal, which the 13th Amendment restricts against, since at that point, he was as a criminal on Bail/Bond, "[a]accordingly, by not addressing the lack of personal jurisdiction [the] judgment[s are all) in Case# 17 D 1098 are void," even according to Illinois Case Law, at their highest Supreme Court. See (Emphasis in original.) Id. ¶¶ 30–38." People v. Castleberry, 43 N.E.3d 932, 938 (Ill. 2015).

**CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331**

3. Mr. Hooker states that the Will County Courthouse has not abided by their Superior Courts Mandates and Orders, and have further stripped Him, or a Fair Trail, and the Due Process secured to him under the United States Constitution as listed above, as states the following as proof of further violations of his Due Process and his Right to Petition:

    i. On May 30, 2017, the Illinois Supreme Court issued Order M.R. 18368 (attached), which made it required for ever Circuit Court of Illinois to file all documents via the reSearch:IL, by July 1, 2018. This has been brought to the attention of the representatives of TylerHost, as well as multiple Clerks at the Will County Courthouse, and Counsel Erin O'brien, this Order. According to ILL. CONST. art. 6, § 16 (1970). "General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules", and therefore, the Will County Courthouse must abide by M.R. 18368, and these rules should have been effective in Mr. Hooker's case, as well as Counsel O'Brien, an Officer of the Court, see. Ex parte Garland, 71 U.S. 333 (1866), should have also brought this to the Court's attention for the Preservation of Justice. Illinois courts have adopted a construction of judicial power that asserts dominance over court rule-making, while abandoning a prior concept of concurrent' authority exercised by the judiciary and the legislature. This expansionist concept of judicial authority culminated in People v. Jackson, where the Illinois Supreme Court held that one of its rules would supersede any conflicting legislative enactment.

    ii. As such, the Court of Will County is currently conducting themselves outside the authority of the Illinois Supreme Court, and have stripped themselves of any Jurisdiction, since the Illinois Constitution only gives General Administrative authority to the Illinois Supreme Court, see., In re: Mandatory Electronic Filing in Civil Cases (M.R. 18368); Citizen Participation Act, 735 ILCS 110/1 et seq., at, Westfield Partners, Ltd. v. Hogan, 740 F. Supp. 523 525 (N.D. Ill. 1990).

    iii. Therefore, Mr. Hooker states, that the Federal Courts have Jurisdiction over him, since the Will County Courthouse has acted outside of the Illinois Constitution and because of the Long-Arm Doctrine, the United States Constitution. See 735 ILCS 5/2-209., A-Connoisseur, 742 F.Supp. at 42.

    iv. Further, since the Will County Courthouse has refused to follow the rules of procedure as laid out by the Illinois Constitution, which gives authority to the Illinois Supreme Court as the general administrative governing body according to ILL. CONST. art. 6, § 16 (1970). "General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules", the Will County Courthouse has stripped Mr. Hooker of his Due Process and acted outside of their authority and outside of the Illinois Constitution, as well as the United States Constitution under the Due Process Clause, Equal Protection Clause, the First Amendment, which gives us a right for Proper Redress, as well as the Second Amendment, which is the Right to Self Defense, both inside and outside of the Courthouse (Offensive and Defensive War), and therefore, the acts, orders, mandates, decrees are void, see., Crouch v. Crouch, 566 F.2d 486 (5th Cir. 1978) (federal court has jurisdiction to enforce separation agreement between ex-spouses who have lived

apart for several years); Zimmerman v. Zimmerman, 395 F. Supp. 719, 721 (E.D. Pa. 1975) (maintenance and support contract); see, See, e.g., Lloyd v. Loeffler, 694 F.2d 489, 493 (7th Cir. 1982) (suit against ex-spouse and her parents for tortious interference with child custody is not barred by domestic relations exception; resolution of suit does not require special competence of state domestic relations courts); Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (district court has jurisdiction to grant monetary relief to father who is legal custodian of children allegedly abducted by mother); Wasserman v. Wasserman, 671 F.2d 832, 834 (4th Cir.), cert. denied, 459 U.S. 1014 (1982) (suit against ex-spouse for generally cognizable torts of child enticement and intentional infliction of emotional distress is within federal court jurisdiction). Cf Fenslage v. Dawkins, 629 F.2d 1107, 1110 (5th Cir. 1980) (without discussing domestic relations exception, court held that plaintiff in diversity suit may recover damages from ex-spouse and his relatives for intentional infliction of emotional distress resulting from wrongful taking of child from plaintiff's legal custody). Torts other than those arising from a parental kidnapping have also been litigated in federal court. See, e.g., Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980) (permitting suit against ex-spouse and others for malicious prosecution, arson, conversion, and conspiracy).

### CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 & 1332 - COMMERCE CLAUSE

4. Mr. Hooker states Federal Courts have jurisdiction given Mr. Hooker is a Michigan resident, GS11, a disabled veteran, who receives income from only federal sources, via Veterans Disability, and funds from his work as a GS11 with the Department of Defense, and these monies are passed across state lines, and have nothing to do with State funding, since they are purely Federal Funds/Monies, and therefore falls completely within the Jurisdiction of the Federal Courts, under the Interstate and Commerce Clause, see., United States v. Darby (1941), the "power of Congress over interstate commerce is not confined to the regulation of commerce among the states," see., U.S. v. Lopez (1995) and U.S. v. Morrison (2000), the Court confined this regulatory authority to intrastate economic activity. In addition, in a concurring opinion in Gonzales v. Raich (2005), Justice Scalia maintained that, under Lopez, "Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce."

### CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 & 1332 – DIVERSITY JURISDICTION

5. Mr. Hooker states Federal Courts have jurisdiction according to Diversity Jurisdiction, since Mr. Hooker is a Michigan resident, GS11, a disabled veteran, who receives income from only federal sources, via Veterans Disability, and funds from his work as a GS11 with the Department of Defense, and these funds are both given to him under contract of Law by both the Federal Government via the Department of Defense, as well as assignable only to him through the VA according to 38 U.S.C. §5301(a)(1), benefits paid by the Department of Veterans Affairs (VA) are not subject to levy, seizure or attachment. see, e.g., Cole v. Cole, 633 F.2d 1083, 1088 (4th Cir. 1980) (but domestic relations exception does not extend to all cases of a domestic relations nature); Spindel v. Spindel, 283 F. Supp. 797, 806 (E.D.N.Y. 1968) (broad interpretation of domestic relations, based on expansive reading of Supreme Court dicta, is unwarranted). Accord, Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (diversity suit with intrafamily aspects should be heard by federal court if essence of suit is in tort or contract and if federal court need

not exceed its competence); see, e.g., Crouch v. Crouch, 566 F.2d 486 (5th Cir. 1978) (federal court has jurisdiction to enforce separation agreement between ex-spouses who have lived apart for several years); Zimmerman v. Zimmerman, 395 F. Supp. 719, 721 (E.D. Pa. 1975) (maintenance and support contract); see, See, e.g., Lloyd v. Loeffler, 694 F.2d 489, 493 (7th Cir. 1982) (suit against ex-spouse and her parents for tortious interference with child custody is not barred by domestic relations exception; resolution of suit does not require special competence of state domestic relations courts); Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (district court has jurisdiction to grant monetary relief to father who is legal custodian of children allegedly abducted by mother); Wasserman v. Wasserman, 671 F.2d 832, 834 (4th Cir.), cert. denied, 459 U.S. 1014 (1982) (suit against ex-spouse for generally cognizable torts of child enticement and intentional infliction of emotional distress is within federal court jurisdiction). Cf Fenslage v. Dawkins, 629 F.2d 1107, 1110 (5th Cir. 1980) (without discussing domestic relations exception, court held that plaintiff in diversity suit may recover damages from ex-spouse and his relatives for intentional infliction of emotional distress resulting from wrongful taking of child from plaintiff's legal custody). Torts other than those arising from a parental kidnapping have also been litigated in federal court. See, e.g., Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980) (permitting suit against ex-spouse and others for malicious prosecution, arson, conversion, and conspiracy).

### CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 & 1332 – ENCLAVE THEORY – SOLE EMLOYER – FEDERAL STATE RELATIONS

6. Mr. Hooker states Federal Courts have jurisdiction, since all of his income is from Federal Funds as his ultimate employer is the Federal Government, under Federal Contract both coming from his work as a GS11, and as a Disabled Veteran, in similar fashion to Supplemental Security Income, since the VA is supplementing the income that he can no longer earn, since he is disabled, and as such, according to the Tenth Amendment, Federal Courts have Jurisdiction in this case, see., United States v. Darby, 312 U.S. 100, 124 (1941); EEOC v. Wyoming, 460 U.S. 266 (1983); 460 U.S. 226 (1983). In upholding an amendment to the Age Discrimination in Employment Act of 1967 to include state and local governments within the definition of "employer," the Court attempted to clarify its holding in National League of Cities. Qualifying its allusion to the tenth amendment in National League of Cities, the Court all but rejected an enclave theory, reducing the amendment to a mere expression of federal-state relations: The principle of immunity articulated in National League of Cities is a functional doctrine,. . . whose ultimate purpose is not to create a sacred province of state autonomy, but to ensure that the unique benefits of a federal system in which the States enjoy a 'separate and independent existence,' . not be lost through undue federal interference in certain core state functions.

### CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 & 1332 – NECESSARY AND PROPER CLAUSE – FULL FAITH AND CREDIT ACT – INTERSTATE COMMERCE & 42 U.S.C. 666

7. Mr. Hooker states Federal Courts have jurisdiction, based on the Federal Authority to support Child Support as seen under statue 42 U.S.C. 666, since this statue causes each state to comply with section 654(20)(A), which complies with the Necessary and Proper Clause, see., Missouri v. Holland (1920) that Congress could use the Necessary and Proper Clause to "carry[] into Execution" the treaty power by implementing and extending the substantive terms of a treaty. This treaty is no difference than an enactment of a Federal Statue by which its scope extends to other states, therefore conforming to a Treaty atmosphere, as well as a Mandate, as seen in the Tenth Amendment, as well as the Interstate Clause, and Necessary and Proper Clause, as well as the Full Faith and Credit Act 28 U.S.C. § 1738, see., Parsons Steel, Inc. v. First Alabama Bank,

474 U.S. 518 (1986), The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts as well as state courts to give state judicial proceedings "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken." The Anti-Injunction Act, 28 U.S.C. § 2283, generally prohibits a federal court from granting an injunction to stay proceedings in a state court, but excepts from that prohibition the issuance of an injunction by a federal court "where necessary . . . to protect or effectuate its judgments."

## CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 & 1332 – ROE v. WADE – RES JUDICATA – DUE PROCESS & 14th AMENDMENT

8. Mr. Hooker states Federal Courts have jurisdiction, under the Due Process Clause of the Fourteenth Amendment as well as Res Judicata, and states that the Federal government has jurisdiction, see., Roe v. Wade, 410 U.S. 113 (1973), "In the first trimester of pregnancy, the state may not regulate the abortion decision; only the pregnant woman and her attending physician can make that decision. In the second trimester, the state may impose regulations on abortion that are reasonably related to maternal health. In the third trimester, once the fetus reaches the point of "viability," a state may regulate abortions or prohibit them entirely, so long as the laws contain exceptions for cases when abortion is necessary to save the life or health of the mother." The Domestic Relation exception did not keep the Supreme Court from deciding on Roe v Wade, under both the Due Process Clause, noted in the Fourteenth Amendment, pregnancy became within the Jurisdiction of the Federal Government, since it falls within the Right to Privacy. Also see Gonzalez v. Carhart, which gives Congress ability to ban certain types of abortions, and therefore the Domestic Relation exception falls short of Congresses ability as well as the Federal Courts ability to keep Lawful Order within the U.S. Government as a whole, as seen under the Necessary and Proper Clause.

## CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 & 1332 – DUE PROCESS – EQUAL PROTECTION – 14th AMENDMENT – NECESSARY AND PROPER CLAUSE – RES JUDICATA

9. Mr. Hooker states Federal Courts have jurisdiction, under the Due Process Clause, and Equal Protection Clause of the Fourteenth Amendment, which grants the right to marry as a Fundamental Right given it is inherent to the concept of individual autonomy, it protects the most intimate association between two people, it safeguards children and families by according legal recognition to building a home and raising children, and it has historically been recognized as the keystone of social order, see., Obergefell v. Hodges, 576 U.S. 644 (2015); which also agrees with the Necessary and Proper Clause, see., Missouri v. Holland (1920), as well as the Tenth Amendment. Further, according to the First Amendment, the Federal Government has the authority to regulate State licensing on marriage, since the First Amendment does not allow states to deny same-sex couples the right to marry on the same terms as those for opposite-sex couples, see., Obergefell v. Hodges, 576 U.S. 644 (2015).

## CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 OBSTRUCTION OF JUSTICE

In furtherance of Federal Jurisdiction, Mr. Hooker states Federal Courts have jurisdiction, under the Due Process Clause, and Equal Protection Clause of the Fourteenth Amendment, since a Judgment for Dissolution of Marriage was entered without authority or jurisdiction, since the Marriage Judgement is based on an Order of Protection, where Mr. Hooker was stripped of his Due Process of Law, when court transcripts were fabricated which created an Abomination of the Judiciary, whereby the Will County Courthouse began in Case Creating, which is the unlawful creation of fictions cases, that have the ability to overturn Federal, and Constitutional Law, see., the 14th Amendment – "Nor shall any State deprive any person of life, liberty, or property without due process of law," See., Bank of Columbia v. Okely, 4 Wheat. 235-244:

> "As to the words from Magna Charta, incorporated into the Constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at last settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice."

a. Order of Protection transcripts were fabricated, Obstruction of Justice was created, documented fraud was discovered, in the fabricated and obstructed transcripts produced by the Will County Courthouse, under the signature and discretion of Judge Garcia. See., Cole v. Cole, 633 F.2d 1083, 1088 (4th Cir. 1980) (but domestic relations exception does not extend to all cases of a domestic relations nature); Spindel v. Spindel, 283 F. Supp. 797, 806 (E.D.N.Y. 1968) (broad interpretation of domestic relations, based on expansive reading of Supreme Court dicta, is unwarranted). Accord, Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (diversity suit with intrafamily aspects should be heard by federal court if essence of suit is in tort or contract and if federal court need not exceed its competence); see, e.g., Crouch v. Crouch, 566 F.2d 486 (5th Cir. 1978) (federal court has jurisdiction to enforce separation agreement between ex-spouses who have lived apart for several years); Zimmerman v. Zimmerman, 395 F. Supp. 719, 721 (E.D. Pa. 1975) (maintenance and support contract); see, See, e.g., Lloyd v. Loeffler, 694 F.2d 489, 493 (7th Cir. 1982) (suit against ex-spouse and her parents for tortious interference with child custody is not barred by domestic relations exception; resolution of suit does not require special competence of state domestic relations courts); Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (district court has jurisdiction to grant monetary relief to father who is legal custodian of children allegedly abducted by mother); Wasserman v. Wasserman, 671 F.2d 832, 834 (4th Cir.), cert. denied, 459 U.S. 1014 (1982) (suit against ex-spouse for generally cognizable torts of child enticement and intentional infliction of emotional distress is within federal court jurisdiction). Cf Fenslage v. Dawkins, 629 F.2d 1107, 1110 (5th Cir. 1980) (without discussing domestic relations exception, court held that plaintiff in diversity suit may recover damages from ex-spouse and his relatives for intentional infliction of emotional distress resulting from wrongful taking of child from plaintiff's legal custody). Torts other than those arising from a parental kidnapping have also been litigated in federal court. See, e.g., Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980) (permitting suit against ex-spouse and others for malicious prosecution, arson, conversion, and conspiracy). Exhibit **B – Comparison of Fabricated Transcripts/Obstruction of Justice**

## **CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 & 1332 DIVERSITY JURISDICTION**

10. Mr. Hooker states Federal Courts have jurisdiction, under Diversity Jurisdiction, since two (2) children were born, Jaidyn E. Hooker, born June 22, 2009, and Elijah T. Hooker, born March 10, 2014 out of the marriage between Mr. Hooker and Jaclynn Hooker, and further, that both parties adopted Madisyn Marie Hooker, born Decmeber 20, 2011, due to a Wrongful Death situation, in which Madisyn Hooker's Mother Michelle Loher was tragically, and surprisingly killed.

    Therefore, as a result of adopting Madisyn Marie Hooker and the Wrongful Death Case existing in the state of Texas during the time of the Divorce Proceedings, and these monies, which were/are over the $75,000 threshold, and these monies being put into a Trust, and this Trust being overseen by the Petitioner, which was all occurring during the instant case at hand, the Federal Courts have both Subject Matter Jurisdiction and Personal Jurisdiction over this case, given the brevity of the Wrongful Death Case with Michelle Loher , and these monies being used by the Petitioner. See, e.g., Jones v. Carvell, 641 P.2d 105 (Utah 1982) (mother entitled to damages for loss of son's love, companionship, protection, and affection caused by defendant's negligence); Ahrenholz v. Hennepin County, 295 N.W.2d 645, 648 (Minn. 1980) ("The parents may be compensated for loss of advice, comfort, assistance, and protection which they could reasonably have expected if the child had lived."); Caradori v. Fitch, 200 Neb. 186, 263 N.W.2d 649 (1978) (parents and siblings allowed recovery for loss of security, comfort, and companionship of the child); Matthews v. Rodgers, 284 U.S. 521, 529 (1932); Waterman v. Canal-Louisiana Bank Co., 215 U.S. 33, 43 (1909); Jackson v. United States Nat'l Bank, 153 F. Supp. 104, 109 (D. Or. 1957); Albanese v. Richter, 67 F. Supp. 771, 773 (D.N.J. 1946), a 'd, 161 F.2d 688 (3d Cir.), cert. denied, 332 U.S. 782 (1947); Loring v. Marsh, 15 F. Cas. 905, 914 (C.C.D. Mass. 1865) (No. 8,515), af'd, 73 U.S. (6 Wall.) 337 (1867); Baker v. Biddle, 2 F. Cas. 439, 447 (C.C.E.D. Pa. 1831) (No. 764).

## **CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 - 42 U.S.C. 666**

11. Mr. Hooker states Federal Courts have jurisdiction, since he has been unable to utilize his Right to Petition under the Due Process of Law in the Will County Courthouse, even when he has shown and proven, as well as cited Illinois Superior Court Case Law, that a slight increase in income, does not warrant an increase in child support, See., In re Marriage of Connelly, 438 Ill. Dec. 188, 145 N.E.3d 724, 2020 IL App (3d) 180193 (Ill. App. Ct. 2020), however, this was overlooked by the Court, and Mr. Hooker firmly stated that:

    > i. A small increase in the obligor's income does not constitute a substantial change in circumstances, See In re Marriage of Armstrong , 346 Ill. App. 3d 818, 822-23, 282 Ill.Dec. 124, 805 N.E.2d 743 (2004) (10% increase in salary); In re Marriage of Butler , 106 Ill. App. 3d 831, 836, 838, 62 Ill.Dec. 535, 436 N.E.2d 561 (1982) (8% increase in earnings). This is particularly true where the custodial parent's income has also increased so that both parents have more to spend on the children. See Armstrong , 346 Ill. App. 3d at 822-23, 282 Ill.Dec. 124, 805 N.E.2d 743.

      ii. Further, the MSA, and JDOM contemplated Mr. Hooker gaining further employment with a raise in income/salary, and therefore, according to Salvatore , 2019 IL App (2d) 180425, ¶ 24, 429 Ill.Dec. 626, 124 N.E.3d 1136, this does not constitute a substantial change in circumstances, because the parties were fully aware when they entered into the MSA and JDOM, See., Salvatore , 2019 IL App (2d) 180425, ¶ 24, 429 Ill.Dec. 626, 124 N.E.3d 1136" In re Marriage of Connelly, 438 Ill. Dec. 188, 195 (Ill. App. Ct. 2020).

## CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 – DUE PROCESS OF LAW – OBSTRUCTION OF JUSTICE

12. Mr. Hooker states Federal Courts have jurisdiction, since it was shown to the Will County Court, in 2018 by the Respondent, and attested to on March of 2022 by the Petitioners Counsel, that the Petitioner had falsified her 2018 financial affidavit 720 ILCS 5/32-2, in failing to include a significant financial gift of $150,000 (**Exhibit A**), as required by 750 ILCS 505(a)(1.5), as well as 720 ILCS 5/32-2, and 735 ILCS 5/1-109, which according to In re Marriage of Rogers, the Illinois Supreme Court dictated that all sources of income must be calculated, see., The "inclusion of gifts as "income" is proper under the plain and ordinary language of section 505(a)(3) itself." In re Marriage of Rogers, 820 NE 2d 386 – Ill: Supreme Court 2004

    Mr. Hooker states that the falsified documents amount to Obstruction of Justice, and bring this case before the Federal Courts Jurisdiction.  See., Cole v. Cole, 633 F.2d 1083, 1088 (4th Cir. 1980) (but domestic relations exception does not extend to all cases of a domestic relations nature); Spindel v. Spindel, 283 F. Supp. 797, 806 (E.D.N.Y. 1968) (broad interpretation of domestic relations, based on expansive reading of Supreme Court dicta, is unwarranted). Accord, Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (diversity suit with intrafamily aspects should be heard by federal court if essence of suit is in tort or contract and if federal court need not exceed its competence); see, e.g., Crouch v. Crouch, 566 F.2d 486 (5th Cir. 1978) (federal court has jurisdiction to enforce separation agreement between ex-spouses who have lived apart for several years); Zimmerman v. Zimmerman, 395 F. Supp. 719, 721 (E.D. Pa. 1975) (maintenance and support contract); see, See, e.g., Lloyd v. Loeffler, 694 F.2d 489, 493 (7th Cir. 1982) (suit against ex-spouse and her parents for tortious interference with child custody is not barred by domestic relations exception; resolution of suit does not require special competence of state domestic relations courts); Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (district court has jurisdiction to grant monetary relief to father who is legal custodian of children allegedly abducted by mother); Wasserman v. Wasserman, 671 F.2d 832, 834 (4th Cir.), cert. denied, 459 U.S. 1014 (1982) (suit against ex-spouse for generally cognizable torts of child enticement and intentional infliction of emotional distress is within federal court jurisdiction). Cf Fenslage v. Dawkins, 629 F.2d 1107, 1110 (5th Cir. 1980) (without discussing domestic relations exception, court held that plaintiff in diversity suit may recover damages from ex-spouse and his relatives for intentional infliction of emotional distress resulting from wrongful taking of child from plaintiff's legal custody). Torts other than those arising from a parental kidnapping have also been litigated in federal court. See, e.g., Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980) (permitting suit against ex-spouse and others for malicious prosecution, arson, conversion, and conspiracy).

## CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 – DUE PROCESS OF LAW – OBSTRUCTION OF JUSTICE

13. Mr. Hooker states Federal Courts have jurisdiction, since it has been shown, and agreed by the Petitioners Counsel, that the Petition has received substantial sums of money from her father during and before the divorce proceedings and has kept these monies form the Courts attention, it would be in the Courts best interest to find out if the Petitioner has been paying her own attorney bills, or has been receiving money from her father, or her father has been paying these recurring bills on her behalf, since this would qualify as a source of income, under 750 ILCS 5050(a)(3)(A), see., In re Marriage of Schlei "Although the Act does not define "income," our supreme court has construed the plain and ordinary meaning of that term to mean "`something that comes in as an increment or addition, a gain or recurrent benefit that is usu[ually] measured in money.'" In re Marriage of Schlei, 46 NE 3d 286 – Ill: Appellate Court, 3rd Dist. 2015, see. In re Marriage of Rogers, [t]he "inclusion of gifts as "income" is proper under the plain and ordinary language of section 505(a)(3) itself." In re Marriage of Rogers, 820 NE 2d 386 – Ill: Supreme Court 2004, see., Cole v. Cole, 633 F.2d 1083, 1088 (4th Cir. 1980) (but domestic relations exception does not extend to all cases of a domestic relations nature); Spindel v. Spindel, 283 F. Supp. 797, 806 (E.D.N.Y. 1968) (broad interpretation of domestic relations, based on expansive reading of Supreme Court dicta, is unwarranted). Accord, Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (diversity suit with intrafamily aspects should be heard by federal court if essence of suit is in tort or contract and if federal court need not exceed its competence); see, e.g., Crouch v. Crouch, 566 F.2d 486 (5th Cir. 1978) (federal court has jurisdiction to enforce separation agreement between ex-spouses who have lived apart for several years); Zimmerman v. Zimmerman, 395 F. Supp. 719, 721 (E.D. Pa. 1975) (maintenance and support contract); see, See, e.g., Lloyd v. Loeffler, 694 F.2d 489, 493 (7th Cir. 1982) (suit against ex-spouse and her parents for tortious interference with child custody is not barred by domestic relations exception; resolution of suit does not require special competence of state domestic relations courts); Bennett v. Bennett, 682 F.2d 1039, 1042 (D.C. Cir. 1982) (district court has jurisdiction to grant monetary relief to father who is legal custodian of children allegedly abducted by mother); Wasserman v. Wasserman, 671 F.2d 832, 834 (4th Cir.), cert. denied, 459 U.S. 1014 (1982) (suit against ex-spouse for generally cognizable torts of child enticement and intentional infliction of emotional distress is within federal court jurisdiction). Cf Fenslage v. Dawkins, 629 F.2d 1107, 1110 (5th Cir. 1980) (without discussing domestic relations exception, court held that plaintiff in diversity suit may recover damages from ex-spouse and his relatives for intentional infliction of emotional distress resulting from wrongful taking of child from plaintiff's legal custody). Torts other than those arising from a parental kidnapping have also been litigated in federal court. See, e.g., Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980) (permitting suit against ex-spouse and others for malicious prosecution, arson, conversion, and conspiracy).

## CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331

14. Mr. Hooker states Federal Courts have jurisdiction since the Will County Courthouse has not abided by their Superior Courts Mandates and Orders, and have further stripped Him, or a Fair Trail, and the Due Process secured to him under the United States Constitution as listed above, as

states the following as proof of further violations of his Due Process and his Right to Petition which dictates justice, through Diversity, Equity and Inclusion, by not allowing Mr. Hooker to have a sense of Agency, since he is a 70% Disabled Veteran with difficulty commuting back and forth from Grand Rapids, MI, to the Will County Courthouse in Illinois to conduct his hearing remotely.

Mr. Hooker states: that he had requested the ability to appear Remotely according to Illinois Supreme Court Rules 45 and 241, and stated that In the exercise of the general administrative and supervisory authority over the courts of Illinois conferred on The Supreme Court of Illinois pursuant to article VI, section 16, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, sec. 16); and in view of the state of emergency that had been declared by the Governor of the State of Illinois, as well as the President of the United States of America, to prevent the spread of the novel coronavirus; and in the interests of the health and safety of all court users, staff, and judicial officers during these extraordinary circumstances, he requested to appear remotely for Case# 17 D 1098, and stated the following reasons:

    a. *"Courts are encouraged to liberally grant requests to appear remotely and to be particularly accommodating of case participants who face an obstacle to appearing personally in court, including but not limited to distance from the court, difficulty with traveling, military service, incarceration, hospitalization or illness, disability, other health or mobility limitations, work or childcare obligations or responsibilities, or limited court operations. Whether telephone versus video technology is appropriate is a determination for the court to make based on each individual case and consideration of any hardship factors. Some case participants may appear by telephone, some by video, and some in person all on the same case."*

        i. (1) Mr. Hooker is a 70% Disabled Veteran, having served for the United States Coast Guard (Active Duty), during the time Hon. President Obama served in Office, and Mr. Hooker was Honorable Transferred from His Active Duty Service. (2) Mr. Hooker, is currently a Federal Officer (GS11), with the Department of Defense (DoD), serving for the Defense Contract Management Agency. (3) Mr. Hooker, is currently under a DoD blanket telework assignment given the COVID-19 Pandemic. (4) Mr. Hooker is currently serving for the DoD, during the international conflict and War between Russia and Ukraine. (5) Mr. Hooker is a resident of Michigan, and currently resides in Michigan, and the commute to the Will County Courthouse, from the city of residence (Grand Rapids, MI), is currently over 3 hours long one way. As such, according to the authority as laid out in Illinois Supreme Court Mandate M.R. 30370, Mr. Hooker request remote appearance.

### CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 – INJUCTIVE RELIEF - 28 U.S.C. § 2283

15. Mr. Hooker states Federal Courts have jurisdiction, and request Injunctive Relief against the Orders Decreed by the Will County Courthouse in relation to Case 17 D 1098, according to 28 U.S.C. § 2283, see., Mitchum v. Foster, 407 U.S. 225 (1972), given the brevity of the issues surrounding the current divorce, which include three children, see., In re India B, 202 Ill. 2d 522, 536 (Ill. 2002), the modification of child support outside of statue and case law 750 ILCS 5050(a)(3)(A), In re Marriage of Schlei; In re Marriage of Rogers. This unlawful activity by the Will County Courthouse, enacts 42 U.S.C 1983, as well as 18 U.S.C. 242, see. Mitchum v. Foster, 407 U.S. 225 (1972); Dombrowski v. Pfister, 380 U.S. 479 (1965), as well as under an exception to the Mootness Doctrine, since "there is a reasonable expectation that the Mr. Hooker

would be subjected to the same action again, see., In re A Minor, 127 Ill.2d at 258.; In re Barbara H, 183 Ill. 2d 482, 491 (Ill. 1998), and in addition, the Public Interest Doctrine, since the questions Mr. Hooker have advanced to the court are of a (1) substantial public nature; (2) an authoritative determination is needed for future guidance; and (3) the circumstances are likely to recur. In re J.B., 204 Ill. 2d 382, 387 (2003); Walgreen, 186 Ill. 2d at 365.

## CONTINUED FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331 – PRESERVATION OF JUSTICE - 42 U.S.C. 666 – NECESSARY AND PROPER CLAUSE

In addition, Mr. Hooker believes that the below question should be Certified by a Federal Court since it ultimately involves a National Question according to the Long-Arm Statue, and Mr. hooker has not had a fair trial in Will County. See., Hampton v. Metropolitan Water Reclamation District of Greater Chicago, 2016 IL 119861, ¶ 6; Crim, 2020 IL 124318, ¶ 19 (quoting Ill. S. Ct. R. 308(a) (July 1, 2017)) since "the order involves a question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The Certified Question: It has been shown, and agreed by the Petitioners Counsel, that the Petition has received substantial sums of money from her father during and before the divorce proceedings and has kept these monies form the Courts attention, it would be in the Courts best interest to find out if the Petitioner has been paying her own attorney bills, or has been receiving money from her father, or her father has been paying these recurring bills on her behalf, since this would qualify as a source of income, under 750 ILCS 5050(a)(3)(A), see., In re Marriage of Schlei "Although the Act does not define "income," our supreme court has construed the plain and ordinary meaning of that term to mean "'something that comes in as an increment or addition, a gain or recurrent benefit that is usu[ually] measured in money.'" In re Marriage of Schlei, 46 NE 3d 286 – Ill: Appellate Court, 3rd Dist. 2015, see. In re Marriage of Rogers, [t]he "inclusion of gifts as "income" is proper under the plain and ordinary language of section 505(a)(3) itself." In re Marriage of Rogers, 820 NE 2d 386 – Ill: Supreme Court 2004. Therefore, does the above qualify as Income?

## DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

This Notice of Removal is timely if filed within 1 year of the Petitioner "commencing" her action, according to Rule 3 of the Federal Rules of Procedure (FED. R. CIV. P. 3.), and 28 U.S.C. § 1446(b), given the facts of the case stated above. See, Brown v. Tokio Marine & Fire Ins. Co., Ltd., 284 F.3d 871, 873 (8th Cir. 2002); Johnson v. Heublein, Inc., 227 F.3d 236, 241 (5th Cir. 2000); Brierly, 184 F.3d at 534-35; New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 886 (5th Cir. 1998); Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316 (9th Cir. 1998).

Mr. Hooker was served on October 19, 2021, so this Notice of Removal is timely if filed on or before October 19, 2022. Mr. Hooker also states that this Court has jurisdiction under the Equitable Exception and Clean hands Doctrine given the facts stated in the case above. Because there are no other named defendants, no consent to removal is required.

The United States District Court for the Northern District of Illinois embraces Will County, the county in which the state court action is now pending. Therefore, this action is properly removed to the Northern District of Illinois pursuant to 28 U.S.C. § 1441(a).

The only processes or pleading that Mr. Hooker has served or received in the state court

proceeding are attached hereto as Exhibit 1. A true and correct copy of the Action is attached hereto as Exhibit A, pursuant to 28 U.S.C. § 1446(a). Mr. Hooker will file copies of additional state court records and proceedings, if any, within 10 days of receiving them.

Pursuant to 28 U.S.C. § 1446(d), Mr. Hooker will promptly file written notice of this removal and a copy of the Notice of Removal with the clerk of the state court in which this action is currently pending and will serve a copy of this notice on all parties to the removed action.

By filing this Notice of Removal, Mr. Hooker does not waive, and hereby reserves, any right to assert objections and defenses to Petitioners Action.

WHEREFORE, Respondent Nathaniel Kian Hooker. removes this action from the Circuit Court of Will County, Illinois bearing Case No. 17 D 1098 to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446(b),

Dated: June 6, 2022               Respectfully submitted,


                                  By:   */s/ Nathaniel Kain Hooker*

                                  Nathaniel Kain Hooker
                                  P.O. Box 2288
                                  Grand Rapids, MI 49501
                                  616-251-8141
                                  Hooker_nathaniel@yahoo.com