IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| JACKLYNN N. HOOKER, | ) | |
| | ) | |
| Petitioner, | ) | No. 22 C 2999 |
| | ) | |
| vs. | ) | Judge Virginia M. Kendall |
| | ) | |
| NATHANIEL HOOKER, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION & ORDER

Respondent Nathaniel Hooker removed to this Court on June 8, 2022, an action originally filed as Case No. 17 D 1098 in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois (the "Will County Circuit Court"). Petitioner Jaclynn Hooker moves this Court to remand the case back to the Will County Circuit Court. This Court grants Petitioner's motion to remand because the Court lacks subject-matter jurisdiction and therefore removal was improper. Because no basis in law existed for the removal, the Court further orders Respondent to pay Ms. Hooker's reasonable attorney's fees and costs incurred in the filing of this motion.

BACKGROUND

Nathaniel Hooker and Jaclynn Hooker divorced in December 2018. (Dkt. 11-3). Exercising its jurisdiction under the Illinois Marriage and Dissolution of Marriage Act, 750 ILL. COMP. STAT. 5/101 *et seq.*, the Will County Circuit Court adjudicated the divorce proceedings and entered judgment for the dissolution of marriage, allocation of parental responsibilities, child support, and allocation of marital property, among other related matters. (*Id.*). Mr. Hooker appealed the divorce decree's judgment and lost. (Dkt. 11-4). After discovering in October 2021 that Mr. Hooker had found a job in January 2020 that paid substantially more than what he was earning when they

1

divorced, Ms. Hooker moved to modify Mr. Hooker's child-support obligations for their three children.in the Will County Circuit Court under 750 ILL. COMP. STAT. 5/510. (Dkt. 11-12). The court entered a modified divorce decree after finding Mr. Hooker's employment constituted a substantial change in circumstances and increased his child-support obligations. (Dkt. 11-13). The modified decree also ordered him to share with Ms. Hooker additional child-related expenses. (*Id.*). Mr. Hooker moved to stay this order, arguing the Will County Circuit Court lacked personal jurisdiction over him or subject-matter jurisdiction over the divorce proceedings. (Dkt. 11-14). He also moved separately for a rehearing, continuing to challenge the court's jurisdiction. (Dkt. 11-15). Mr. Hooker then removed the matter to federal court on June 8, 2022, (Dkt. 1), one day before the Will County Circuit Court held a hearing on his motion for a rehearing on the issue of jurisdiction. (Dkt. 11-16). The court denied Mr. Hooker's motion for rehearing and entered an order that same day. (*Id.*).

## LEGAL STANDARD

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States . . . ." 28 U.S.C. § 1441(a). But "[i]f at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). When the court lacks subject-matter jurisdiction, it must remand the case to state court. *Smith v. Wisc. Dep't of Agriculture, Trade, and Consumer Protection*, 23 F.3d 1134, 1139 (7th Cir. 1994). The party seeking removal "bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017).

## DISCUSSION

The United States courts have limited jurisdiction. *See* U.S. CONST. art. III, § 2, cl. 1. Jurisdictional statutes further limit the kinds of cases federal courts may hear: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. District courts also have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Subject-matter jurisdiction is a threshold matter; without it, no case may proceed in federal court. Mr. Hooker's claims cannot establish either this court's federal-question jurisdiction or diversity-of-citizenship jurisdiction.

### A. Federal Court Has No Subject-Matter Jurisdiction.

Mr. Hooker argues 28 U.S.C. § 1331 gives this Court jurisdiction over his divorce proceedings because he is an "Officer of the United States" and "not a regular citizen," who receives his income solely from the federal government. (Dkt. 1 at 3). Mr. Hooker also invokes his status as a veteran of the U.S. Coast Guard to claim he owes allegiance only to federal laws rather than the laws of any particular state. (*Id.* at 4). According to Mr. Hooker, only the federal courts would have jurisdiction over any of his personal affairs, including his divorce and his related child-support obligations. On these bases, he removed his most recent challenges to his divorce decree to federal court, apparently seeking this Court's declaration that the Will County Circuit Court's orders related to that divorce decree void for lack of subject-matter jurisdiction and personal jurisdiction. (*Id.* at 5–6).

Unfortunately for Mr. Hooker, whether he is a federal employee or a veteran, and whether he receives income from the federal government through any salary or benefits, are irrelevant to the Court's subject-matter jurisdiction in this case. Though Congress has granted removal rights to certain federal officers facing civil or criminal lawsuits in state court, this only applies to actions

3

taken in their official capacities. 28 U.S.C. § 1442(a)(1) (granting removal rights to federal courts for federal officers "for or relating to any act under color of such office"). Mr. Hooker's case concerns only the rights and obligations of two parties to a divorce decree. It does not concern any federal employee status or benefits he may have. He further asserts that as a "federally appointed officer," 28 U.S.C. § 1251 confers original jurisdiction over his case in the U.S. Supreme Court. (*Id.* at 3). But even if Mr. Hooker is a "federally appointed officer," Mr. Hooker misunderstands Section 1251, as it applies only to "ambassadors, other public ministers, consuls, or vice consuls *of foreign states*" who are parties to an action. 28 U.S.C. § 1251(b)(1). There is no legal basis for Mr. Hooker to assert that any purported federal employment status, veteran status, or origins of his income automatically grant him access to the federal courts to litigate unrelated matters.

The legal challenges Mr. Hooker brought before the Will County Circuit Court do not arise under the Constitution or laws of the United States, as 28 U.S.C. § 1331 requires. *See Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action."); *Merrill Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 808 (1986) ("Since a defendant may remove a case only if the claim could have been brought in federal court, 28 U.S.C. § 1441(b), . . . the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'"). Rather, they arise exclusively under Illinois law governing marriage and the dissolution of marriage. *See* 750 ILL. COMP. STAT. 5/501 *et seq.* "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890). Mr. Hooker challenges the original divorce decree, (Dkt. 11-3), and Ms. Hooker's subsequent Motion to Modify Child Support under 750 ILL. COMP. STAT. 5/510, (Dkt. 11-12), comprising Case No. 17 D 1098. (*See also* Dkt. 1-1). No question of federal law exists here.

4

Mr. Hooker appears to argue that the Will County Circuit Court violated his constitutional rights under the Fourteenth Amendment by improperly exercising its jurisdiction over his divorce proceedings. (Dkt. 1 at 3–4; Dkt. 17 at 1–2). But he fails to state any legal basis for his claimed deprivation of any constitutional rights, other than he "truly believes" the state court violated his rights simply by exercising its jurisdiction in the underlying divorce proceedings. (Dkt. 1 at 3). Believing—incorrectly—the state court had no jurisdiction over him does not amount to a constitutional violation. Mr. Hooker thus cannot establish any basis for this Court's subject-matter jurisdiction under 28 U.S.C. § 1331.

**1. Domestic-Relations Exception Bars Federal Courts' Exercise of Subject-Matter Jurisdiction**

Mr. Hooker also claims there is diversity of citizenship here to allow the federal court to hear his claim under 28 U.S.C. § 1332. (Dkt. 1 at 8; Dkt. 17 at 2–3). Even if this Court would assume from the filings that Mr. Hooker is a Michigan resident, Ms. Hooker is an Illinois resident, and the amount in controversy in the underlying divorce decree and modified child-support obligations exceed $75,000, the Court would still lack subject-matter jurisdiction. The domestic-relations exception "divests federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Marshall v. Marshall*, 547 U.S. 293, 307-08 (2006) (barring federal jurisdiction over cases involving "divorce, alimony, and child custody decrees"); *see also Syph v. Arce*, 772 Fed. App'x 356, 357 (7th Cir. 2019) ("[T]he domestic-relations exception to federal jurisdiction blocks federal adjudication of cases involving 'divorce, alimony, and child custody decrees.'"). The exception applies equally to assertions of federal-question jurisdiction and diversity jurisdiction. *Syph*, 772 Fed. App'x at 357 (citing *Ankenbrandt*, 504 U.S. at 700-02; *Jones v. Brennan*, 456 F.3d 304, 307 (7th Cir. 2006)). The modification of a child-support obligation under a divorce decree falls in the domestic-relations exception. *Syph*,

5

772 Fed. App'x at 357 (holding plaintiff's challenge to child-support obligations are "part of the typical divorce decree," which federal courts should not supervise); *Keith v. Wisc. Dep't of Workforce Development*, 2022 WL 741731, at *2 (7th Cir. 2022) (affirming dismissal of defendant's challenge to state child-support orders for lack of subject-matter jurisdiction under domestic-relations exception); *Wereko v. Haracz*, 857 Fed. App'x 250, 251 (7th Cir. 2021) (holding plaintiff's challenge to state-court custody order fell within type of cases comprising domestic-relations exception). The case Mr. Hooker removed to federal court involves only matters related to the Hookers' divorce, particularly his child-support obligations. This is clearly a domestic-relations matter, and federal court jurisdiction is barred.

**2. *Rooker-Feldman* Doctrine Bars the Court from Exercising Subject-Matter Jurisdiction.**

The *Rooker-Feldman* doctrine presents an additional basis for remanding this case to state court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) (holding that district courts cannot reverse state-court judgments as void for unconstitutionality, as only the United States Supreme Court can exercise appellate jurisdiction over state-court judgments); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (reaffirming that district courts have no authority to review final state-court judgments). This doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). When a petitioner, at core, seeks to alter a state court's judgment, *Rooker-Feldman* bars relitigation in federal court. *Mains v. Citibank*, 852 F.3d 669, 675 (7th Cir. 2017) ("*Rooker-Feldman* thus applies where the plaintiff seeks relief that is tantamount to vacating the state judgment.").

There is no other way to view Mr. Hooker's removal of his divorce case to the district court than as a request to declare the Will County Circuit Court's judgment as void. His removal notice essentially argues: (1) the Will County Circuit Court never had jurisdiction over him in the first place, (Dkt. 1 at 2–3, 5–6); (2) that his arguments as to jurisdiction "have fallen on deaf ears" in that court, (*id.* at 6); (3) that the court violated his constitutional rights in entering judgment against him, (*id.* at 7); (4) that its judgment was incorrect on the merits because "a slight increase in income does not merit an increase in child support," (*id.* at 12); (5) that the court failed to properly evaluate evidence submitted by both parties during the divorce proceedings, (*id.* at 13–14); and (6) that the court erred in the conduct of those proceedings, (*id.* at 15). He seeks from this Court "Injunctive Relief against the Orders Decreed by the Will County Courthouse in relation to Case 17 D 1098 . . . given the brevity of the issues surrounding the current divorce . . . [and] the modification of child support . . . ." (*Id.* at 15). His brief in opposition to Ms. Hooker's Motion to Remand repeats the removal's purported bases for subject-matter jurisdiction, adding only that he "is asking the court to look at the fraudulent activity explained in the Removal Notice." (Dkt. 17 at 4). In other words, Mr. Hooker asks this Court to take another look at all proceedings before the Will County Circuit Court because he believes they were "fraudulent" and therefore incorrect. This constitutes federal district-court appellate review of state-court proceedings—precisely what *Rooker-Feldman* prohibits this Court from doing.

Mr. Hooker has already challenged the Will County Circuit Court's findings related to his original divorce decree in the Illinois Appellate Court and lost. (Dkt. 11-4). He moved for a rehearing on the order modifying his child-support obligation, (Dkt. 11-15), and the Will County Circuit Court denied this motion. (Dkt. 11-16). Upon remand, Mr. Hooker may pursue an appeal in the Illinois Appellate Court of all issues he believes the Will County Circuit Court may have

7

erred in the modification order, including its own subject-matter jurisdiction over this matter and personal jurisdiction over Mr. Hooker. Should that fail, he may further appeal to the Illinois Supreme Court. Finally, if the Illinois Supreme Court rules against him and he wishes to further challenge the divorce decree or child-support modification as unconstitutional, he may pursue relief in the United States Supreme Court, the only court that may exercise appellate jurisdiction over state-court judgments. *See Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010) ("[I]f the state court's decision causes . . . injury, then review is limited to the state's own appellate judiciary, with the possibility of review by the Supreme Court once the State has made its final decision."). But this Court cannot exercise jurisdiction over this case.

**C. Mr. Hooker's Removal Notice Was Untimely**

Beyond the deficient legal merits of this removal, it was also untimely. A defendant must file a notice of removal within 30 days after receiving a copy of the initial complaint. 28 U.S.C. § 1446(b)(1). Even if this case had been removable—which it never was—the notice should have been filed no later than 30 days after either Ms. Hooker filed for divorce or moved for modification of child support. Ms. Hooker filed for divorce in August 2017, (Dkt. 11-3 at 2), and the Will County Circuit Court entered judgment on December 11, 2018. (Dkt. 11-3). Ms. Hooker filed her Motion to Modify Child Support on October 19, 2021, (Dkt. 11-12), and the court entered its order as to her motion on April 5, 2022. (Dkt. 11-13). Mr. Hooker filed his Notice of Removal on June 8, 2022—65 days after the court had finalized its order. This well exceeds any possible statutory limitation on filing a removal notice, even if the removal had independent merit.

Mr. Hooker asserts Ms. Hooker waived her right to remand a case on the basis of his procedural defect in failing to timely file the removal notice. After the defendant has filed a notice of removal, the plaintiff has 30 days to move to remand a case "on the basis of any defect other than lack of

8

subject matter jurisdiction." 28 U.S.C. § 1447(c). Mr. Hooker is partially correct—Ms. Hooker filed this Motion to Remand on July 19, 2022, which is 42 days. Ms. Hooker's failure to timely file, however, is irrelevant because she properly challenges the court's subject-matter jurisdiction in the removal. There is no time bar to subject-matter jurisdiction.

### D. Reasonable Attorney's Fees and Costs

There was no objectively reasonable basis for Mr. Hooker to remove his challenges to his divorce decree and the order modifying child support to federal court. This Court therefore orders Mr. Hooker to pay all costs related to this Motion to Remand, including Ms. Hooker's reasonable attorney's fees. Section 1447(c) gives the district court discretion to award payment of "just costs," including attorney's fees incurred from a removal and subsequent order of remand. 28 U.S.C. § 1447(c). "As a general rule, if, at the time the defendant filed [the removal] notice in federal court, clearly established law demonstrated that [the defendant] had no basis for removal, then a district court should award a plaintiff [its] attorneys' fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("[T]he standard for awarding fees [under § 1447(c)] should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

As explained, Mr. Hooker's arguments that the federal court has subject-matter jurisdiction over this case fail at every turn. Though he attempts in his removal, (Dkt. 1), and brief in opposition to Ms. Hooker's Motion to Remand, (Dkt. 17), to justify his legal assertions by citing long strings of cases and statutes, clearly established law bars this case in federal court under the domestic-relations exception to subject-matter jurisdiction and the *Rooker-Feldman* doctrine. No showing of bad faith is required under 28 U.S.C. § 1447(c) to award reasonable attorney's fees and costs to

remand an improperly removed case. *Tenner v. Zurek*, 168 F.3d 328, 330 (7th Cir. 1999); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000). Although Mr. Hooker "truly believes and invokes the Jurisdiction of the Federal Courts as a Pro Se," (Dkt. 17 at 5), there simply is no objectively reasonable basis for this case to have been removed.

### E. Conclusion

Mr. Hooker improperly removed this case to federal court, as this court lacks subject-matter jurisdiction over the divorce decree and subsequent Modification Order entered by the Will County Circuit Court. This Court hereby remands Case No. 17 D 1098 to the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois. This Court also orders Mr. Hooker to pay Ms. Hooker for the reasonable attorney's fees and costs incurred in obtaining this Order of Remand. Ms. Hooker shall submit a fee and cost petition to the Court on or before 8/29/22. The Clerk of Court is directed to remand this case to the Circuit Court of the Twelfth Judicial Circuit located in Will County, Illinois forthwith.

Virginia M. Kendall
United States District Judge

Date: August 22, 2022